IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terrika Mack, | C/A No. 3:21-1415-JFA-SVH |
| Plaintiff, | |
| vs. | |
| International Paper Company, | **ORDER** |
| Defendant. | |

## I.    INTRODUCTION

In this employment discrimination case, Plaintiff, Terrika Mack ("Plaintiff") sues her former employer, International Paper Company ("Defendant"), asserting claims for race discrimination, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*. ("Title VII").

All pretrial proceedings in this case, including the instant motion for summary judgment (ECF No. 20), were referred to the Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2) (D.S.C.). The Magistrate Judge assigned to this action[1] prepared a thorough Report and Recommendation ("Report")

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

and opines that this court should grant Defendant's motion for summary judgment. (ECF No. 25). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation.

Plaintiff originally filed this suit in the Court of Common Pleas in Richland County, South Carolina. (ECF No. 1-1). Defendant removed the case to this Court on May 12, 2021. (ECF No. 1). On July 8, 2022, Defendant filed the instant motion for summary judgment (ECF No. 20), and on August 5, 2022, Plaintiff filed her Response. (ECF No. 23). On August 26, 2022, Defendant also filed a Reply. (ECF No. 24).

On September 12, 2022, the Magistrate Judge entered the Report recommending Defendant's motion be granted. (ECF No. 25). On October 10, 2022, Plaintiff filed Objections to the Report. (ECF No. 31). Defendant filed its Reply to Plaintiff's Objections on November 11, 2022. (ECF No. 32). Thus, this matter is ripe for review.

## II.    LEGAL STANDARD

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate Judge, this court is not required to give an explanation for adopting the recommendation. *See Camby*

2

*v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III.    DISCUSSION

As an initial matter, the underlying facts of this case span the course of nine months and are thoroughly articulated in the Report which is incorporated herein.

For context, this Court will briefly summarize the significant facts relevant to its analysis.[2] First, Plaintiff, a black female, began working at Defendant's mill in Eastover, South Carolina on January 10, 2019. Between the months of February and August of 2019, several incidents occurred involving Plaintiff and the Report lays these out in chronological order. However, the most significant incidents appear to be the number of Plaintiff's absences.

The parties dispute the number of absences incurred by Plaintiff because they have different interpretations of Defendant's leave policy. The parties' arguments are irrelevant at this juncture and the Court will merely summarize Plaintiff's attendance record according to the absence report submitted by the Plaintiff as an exhibit to her Response in Opposition to Defendant's motion. (ECF No. 23-4). The issue of whether Plaintiff's absences were excused or not will be discussed later in this Order.

According to this Report, Plaintiff was absent, late, or left work early seven times in the month of February in 2019. (ECF No. 23-4 at 2). In March, Plaintiff was marked late

---

[2] This Court will note the source of the facts where it is especially relevant.

twice and left early once. *Id.* In April, Plaintiff left early once and was absent for three days. (ECF No. 23-4 at 2-4).

On May 6, 2019, it was determined that Plaintiff would be placed on a performance improvement plan ("PIP") due to her attendance issues. (ECF No. 23-12). On May 22, 2019, Plaintiff arrived late. (ECF No. 23-4 at 2-4). On May 29, 2019, Plaintiff was officially issued a PIP regarding attendance. (ECF No. 23-15). In July of 2019, Plaintiff received three evaluations. During her evaluation with Thomas Osteen ("Osteen"), Plaintiff's manager on July 3, 2019,  he noted her attendance as "unacceptable" citing to an occasion where Plaintiff arrived late on May 22, 2019. (ECF No. 23-18 at 3).

On August 7, 2019, Plaintiff reported to work but asked Osteen to leave early multiple times. (ECF No. 20-2 at 108:1-20). Osteen advised Plaintiff that she needed to work through the end of her shift but that he would adjust her start time for the next day. As more thoroughly summarized in the Report, a verbal altercation ensued between Plaintiff and Osteen and Tom Morris ("Morris"), the business unit manager. (ECF No. 25 at 18-23). Ultimately, Plaintiff was suspended with pay. (ECF No.  23-26). She remained suspended until October 10, 2019, when she was terminated. (ECF No. 20-2 at 123:3-8).

Plaintiff has asserted the following claims against Defendant: (1) race discrimination; (2) sex discrimination; and (3) retaliation. Plaintiff's claims arise under Title VII. Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin...." 42 U.S.C. § 2000e–2(a)(1). Plaintiff has two methods of proof by which she can establish her claims—the direct evidence standard, or the burden shifting scheme.

For her discrimination claims, direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Cassity v. Geren,* 749 F.Supp.2d 380, 402 (D.S.C. 2010) citing *Taylor v. Va. Union Univ.,* 193 F.3d 219, 232 (4th Cir. 1999). Plaintiff has not presented any direct evidence of Defendant's alleged discrimination and therefore, her claims must be established through the burden shifting scheme.

Under this burden-shifting scheme, the Plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Cason v. S.C. State Ports Auth.*, C/A No. 2:11-2241-RMG-BM, 2014 WL 588031, at *4 (D.S.C. Jan. 7, 2014).

If the Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143 (2000) citing *Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons but was pretext for discrimination. *Reeves,* 530 U.S. at 143.

As for her retaliation claim, A plaintiff may also establish a violation of Title VII's antiretaliation provision through indirect evidence using the burden-shifting framework of *McDonnell Douglas* discussed *supra. See Coleman v. Boeing Company,* 2018 WL 10666973, at *3 (D.S.C. Jan. 29, 2018).  To establish a *prima facie* case of retaliation, the plaintiff must demonstrate "(1) [she] engaged in a protected activity, (2) the employer acted adversely against h[er], and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).

Throughout the burden shifting scheme set forth in *McDonnell Douglas* under either analysis (discrimination or retaliation), the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. *Coleman,* 2018 WL 10666973, at *3. "Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against [her]." *Id.*

Based on the following reasons, this Court finds the Report accurately concludes that Plaintiff has failed to submit sufficient evidence to create a genuine issue of material fact as to whether Defendant, by and through its employees, unlawfully discriminated against her due to her race or gender, or further, retaliated against her for engaging in her alleged protected activities. Therefore, Defendant's motion for summary judgment is granted.

### a. OBJECTIONS

Plaintiff has lodged the following fifteen objections against the Report and Defendant's Reply addresses each objection in the order in which they were submitted. Therefore, this Court will do the same.

### i. The Report Allegedly Errs in Finding that Plaintiff Did Not Meet her *Prima Facie* Burdens

In Plaintiff's first objection, she argues that the Report improperly discounted the evidence Plaintiff presented to establish her *prima facie* case of discrimination. Rather than explaining how the Report erred in reaching its conclusion as to Plaintiff's discrimination claim, Plaintiff's argument is that she summarily disagrees with the Report. She does not reference a specific portion of the Report in which the Magistrate Judge deliberately ignored or discounted her evidence to find against her. Because this Court reviews the Report *de novo*, Plaintiff was required to submit specific objections to the Report if she disagreed with the Report's recommendation. A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Because Plaintiff has failed to direct this Court to a specific error in the Report, Plaintiff's objection is vague and will be overruled. *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("Generally stated, nonspecific objections have the same effect as would a failure to object.").

> ii. **The Report Allegedly Incorrectly Finds that Plaintiff Did Not Proffer Evidence that her Adverse Employment Actions Occurred Because She is a Black Woman**

Plaintiff objects that the Report disregards the evidence Plaintiff presented and decides against Plaintiff where the facts presented could lead to different conclusions. In this objection, Plaintiff specifically refers to the portion of the Report in which the Magistrate Judge addresses Plaintiff's claim that she was treated differently based on her race. Plaintiff testified the evidence she had to support her claim was "[her]self and what [she] was able to see…" (ECF No. 20-2 at 81-8—16). Further, "[t]he way that I was being treated the entire time leading up to this day." *Id.* Plaintiff also presented testimony from two co-workers, Edward Cooper ("Cooper") and Kendra Montgomery ("Montgomery") who each offered testimony regarding the disparate treatment of black female workers at Defendant's mill. *See* (ECF No. 23 at 28-29).

Plaintiff's evidence is insufficient because she fails to connect these generalized statements of disparate treatment to any specific action taken by Defendant's employees. Although comparator evidence is not required to establish a claim of discrimination, if Plaintiff is going to allege she was treated differently than other employees, Plaintiff bears the burden at this stage to offer evidence of others being treated better than her under

similar circumstances. While the law in the Fourth Circuit does not require an "exact comparison [involving] precisely the same set of work-related offenses occurring over the same period of time and under the same circumstances," the law is clear that some comparison must be made. *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511–12 (4th Cir.1993).

Here, Plaintiff has failed to offer any comparison between her and other similarly situated employees outside of her protected class. Apart from her own testimony, the only evidence Plaintiff has offered to support her allegations is that of her co-workers. Plaintiff places a significant emphasis on the testimony from her co-worker, Edward Cooper who testified management "paid more attention" to Plaintiff than other employees. Plaintiff asserts she experienced heightened scrutiny and constant surveillance from Osteen. Plaintiff's allegations require evidence of a productive comparison to demonstrate the difference in the treatment she allegedly experienced as compared to other employees. But the problem with Plaintiff's evidence, and the reason the Report found it to be insufficient, is because Plaintiff does not attempt to offer any comparison between her and a white male colleague in a similar circumstance. Without supportive evidence, Plaintiff's allegations are merely conclusory statements that do not give rise to a genuine issue of material fact.

Therefore, this Court overrules Plaintiff's second objection.

### iii.  The Report Allegedly Misapplies Defendant's Attendance Policy

Plaintiff objects that the Report erred in its factual findings related to Plaintiff's attendance. Plaintiff states the issue of her attendance is crucial to the analysis of her claims, but she does not explain how the Report misapplied the Defendant's attendance

policy. As will be further explained in this Order, this Court finds Plaintiff's attendance record is not crucial to the analysis of her claims and does not create a genuine issue of material fact as to whether Defendant discriminated or retaliated against her. Because this objection does not explain the Report's misapplication of Defendant's policy, this Court finds Plaintiff's third objection is nonspecific and will be overruled.

> ### iv.    The Report Allegedly Ignores Plaintiff's Chart of Evidence Refuting Defendant's Non-Discriminatory/Non-Retaliatory Reason for Issuing Plaintiff an Attendance PIP

Similar to the previous objection, in her fourth objection, Plaintiff argues the Report incorrectly finds she was absent, tardy, or left early when her absences were excused according to Defendant's policy. Because they were excused absences, Plaintiff argues Defendant's issuance of the attendance PIP is further evidence of Defendant targeting her.

The validity of Plaintiff's attendance record is immaterial to this Court's analysis if Defendant truly believed Plaintiff's absences were unexcused. The Fourth Circuit has made clear that once an employer "articulates a reason for discharging the plaintiff not forbidden by law, it is not [within the courts'] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). Defendant has presented evidence that its employees issued the PIP, suspended Plaintiff, and ultimately, discharged her, in part, because they believed Plaintiff had acquired a requisite number of absences which counted against her. *See* (ECF No. 23-33 at 4). Although Plaintiff argues that her alleged attendance issues were pretext for discrimination, Plaintiff has not produced any evidence to support this contention. Instead, Plaintiff's argument focuses on demonstrating

11

Defendant's decision was incorrect rather than false. *See Id.* at 298-299 (To establish that an employer's "proffered justification is pretext for discrimination, the plaintiff must prove both that the reason is *false*, and that the discrimination was the actual reason for the challenged conduct.") (emphasis added). Further, Plaintiff's own opinions regarding her performance and the status of her absences is irrelevant because "it is the perception of the decision maker which is relevant, not the self-assessment of plaintiff." *Id.* at 299. It is not the role of this Court to determine whether Defendant's decisions were right or wrong, only whether they were discriminatory. Without more, Defendant's misclassification of Plaintiff's absences as unexcused does not equal discrimination.

Therefore, Plaintiff's fourth objection is overruled.

### v.  The Report Allegedly Carte Blanche Adopts Defendant's Version of Facts

Plaintiff objects to the factual recitation section in the Report. Plaintiff argues that it ignores Plaintiff's evidence, and instead, wholly adopts Defendant's version of events. Specifically, Plaintiff disputes the Report's analysis of the events that occurred on May 22, 2019. Plaintiff argues she submitted competent evidence that Osteen engaged in unlawful targeted treatment of Plaintiff when he issued her an attendance infraction for her late arrival.

Plaintiff's fifth objection suffers from the same insufficiencies as her previous objection. Plaintiff's argument is that Report incorrectly failed to consider the attendance infraction to be a form of discrimination when she was not actually late to work. But, once again, Plaintiff's argument misses the mark. Osteen issued the attendance infraction based

on his belief or opinion that she was late. Plaintiff's opinion that she was not late is irrelevant because "it is the perception of the decisionmaker which is relevant, not the self assessment of the Plaintiff." *Id.* To establish this infraction was a pretext for discrimination, Plaintiff must present more evidence than her belief that she was not actually late.

While this Court may disagree with Osteen's decision to issue the infraction when he knew she experienced car trouble and it was her birthday, this Court cannot judge an employer's decisions by a standard of right or wrong. *See Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 272 (4th Cir. 2005) (quoting *DeJarnette v. Corning*, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (the Court "[d]oes not sit as 'a super personnel department weighing the prudence of employment decisions'" made by employers.). This Court must review the facts to determine whether a genuine issue of material fact has been created as to whether Plaintiff was discriminated against for her race or sex. Because Plaintiff has been unable to demonstrate that Osteen's reason for issuing the attendance infraction was false, this Court must overrule Plaintiff's fifth objection.

### vi.  The Report Allegedly Disbelieves Plaintiff's Evidence

Plaintiff objects that the Report dismisses Plaintiff's direct evidence that Defendant ignored Plaintiff's continued reports of sexual harassment which she argues is additional evidence supporting her claims.

The Report recognizes Plaintiff reported the sexual harassment to HR but finds Plaintiff failed to produce any evidence that the relevant individuals allegedly acting against her knew about her reports. Plaintiff refers to an email in the record wherein Osteen writes to himself on April 27, 2019:

Terrika called me

Follow up with Phil in what he said

(ECF No. 23-34). Following her reference to this email, Plaintiff argues her reports were ignored. Plaintiff's does not explain the intended purpose of citing this email or the meaning this Court is supposed to take from it. However, assuming arguendo, this email is evidence of Defendant's retaliation because it references Plaintiff's reports and Plaintiff was issued an attendance PIP only a few days later, this argument fails. As the Report recognizes, Plaintiff had alleged attendance issues prior to her reports and this email. In fact, Plaintiff had alleged attendance issues as early as February of 2019 which was months prior to when Osteen sent this email to himself. Plaintiff's only evidence to support the connection between her reports and Defendant's alleged retaliation—issuance of her attendance PIP, suspension, and termination—is the timing. The Report found and this Court agrees "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 309 (4th Cir. 2006).

Therefore, Plaintiff's sixth objection is overruled.

### vii. The Report Allegedly Ignores that Plaintiff was Meeting Expectations at the Time of her Suspension and Termination

Plaintiff objects that the Report ignores the evidence that shows Plaintiff was meeting expectations at the time of her suspension and termination such that these actions were discriminatory.

Despite meeting her employer's attendance expectations, Plaintiff argues Osteen still marked her attendance as "unacceptable" on her July 3, 2019 evaluation. (ECF No. 23-18). However, Plaintiff notes the bottom of this evaluation stated she had not had any attendance issues since May 22, 2019. *Id.* Plaintiff also received a follow up document to her July 3rd evaluation which stated "[s]ince the issuance of the PIP, there have been no late arrivals, leave earlies, or unexcused absences." (ECF No. 23-20). Therefore, Plaintiff asserts Osteen's unacceptable rating was pretext for discrimination.

Plaintiff's argument is slightly confusing because it misconstrues the timeline of events which is important when considering whether Osteen's rating was truthful or discrimination. Plaintiff's argument makes it seem as if the July 3rd new member evaluation form and the PIP update review form which is also dated July 3rd are contradictory. However, the July 3rd new member evaluation form addresses the time between Plaintiff's previous new member evaluation which occurred on April 29, 2019, and July. See (ECF No. 23-18). Between these evaluations, Plaintiff had an attendance occurrence which was her late arrival on May 22nd and was indicated on the form along with Osteen's rating of "unacceptable." The PIP update review form is different from the new member evaluation form as it only addresses the period from the issuance of the PIP on May 29, 2019, to July 3rd. Because the PIP was issued after Plaintiff's late arrival on May 22nd, this attendance occurrence was not noted on the PIP update review form. Thus, Plaintiff's argument fails to establish a discriminatory motive for Osteen's rating of "unacceptable" because it was specifically related to Plaintiff's late arrival on May 22nd.

Additionally, Plaintiff's argument fails to consider the role the August 2019 incident played in Defendant's decision to suspend and ultimately, terminate her. As set out in the Report, Plaintiff asked to go home, and a verbal altercation ensued between her and management. Plaintiff admits she told Osteen she was not a child and to treat her like an adult, she accused Morris of treating her unfairly, and she was upset. Eventually, Morris asked Plaintiff to leave the premises. The evidence in the record indicates Plaintiff's termination was not solely due to Osteen's rating or even her alleged absences, but that this event played a significant role in management's ultimate decision to ask her to leave.

Therefore, Plaintiff's seventh objection is overruled.

### viii.    The Report Incorrectly States or Infers that Plaintiff's Case had to be Articulated in her Charge of Discrimination

In her eighth objection, Plaintiff cites to the following footnote in the Report:

Plaintiff testified in her deposition that she asked to leave [on August 7, 2019] because she overheated and was sick and vomiting and going to the bathroom frequently; however, Plaintiff also testified that she did not include these allegations in her EEOC charge, the complaint for this case, or in the documentation she prepared for the Eastover Concerns Resolution Process submitted about 12 days following Plaintiff's termination.

(ECF No. 25-18-19 at n. 6). Plaintiff argues the Magistrate Judge improperly determined this information must have been alleged in her Charge of Discrimination. However, as Defendant points out, the Magistrate Judge did not consider the reason Plaintiff asked to leave on August 7, 2019, as the Report states: "Plaintiff asked to go home on the August 2019 Field Day, for whatever reason, and an altercation occurred…" (ECF No. 25 at 37). As such, Plaintiff's inclusion, or omission of these facts in other pleading documents also did not bear on the Magistrate Judge's ultimate recommendation. This Court recognizes

that the inclusion of this footnote in the Report was perhaps unnecessary, but Plaintiff's objection to the substance of the footnote does not create a genuine issue of material fact regarding her claims. Therefore, Plaintiff's eighth objection is overruled.

### ix. The Report's Analysis is Allegedly Incorrect Regarding Plaintiff's Suspension

Plaintiff's objection is twofold: first, the Report erred in disregarding several disputed and undisputed facts which are favorable to Plaintiff, and second, the Report erred in disregarding Morris' comment to Plaintiff about HR which supports her retaliation claim.

Plaintiff asserts the following undisputed facts are favorable to her claims but allegedly disregarded by the Report:

-On August 7, 2019, Plaintiff was performing her job at a field day.

-Near the end of the long workday, Plaintiff attempted to seek permission from Osteen to leave work.

-Osteen told Plaintiff he would have to think about it, while Mike Hill gave approval for Plaintiff to leave.

-Osteen reached out to Tom Morris and Tyler McQueen to gather their thoughts on Plaintiff's request.

-It was decided that Plaintiff would need to stay at work until the machine started back up, which could be after 7:00 p.m.

-During Plaintiff's discussion with Osteen regarding her request for an early dismissal, Plaintiff reported, yet again, that she felt she was being treated adversely and that she was being targeted.

This Court finds that the Report did consider these facts but ultimately, did not find them sufficient to create a genuine issue of material fact as to Plaintiff's claims. Plaintiff

has presented facts which demonstrate her request to leave early was denied and because of Osteen's denial, she accused him of treating her unfairly. She has not presented any undisputed facts of Osteen or the other managers treating other employees differently such as by granting their requests to leave early while Plaintiff was required to work for the remainder of the day. Therefore, Plaintiff's objection is overruled on this basis.

As to the disputed facts, Plaintiff specifically refers to the comment Tom Morris, the Business Unit Manager, made to Plaintiff while suspending her. Allegedly, Morris said "You've already been to HR. I know you've been across the street on me." *See* (ECF No. 23-1). Further, Plaintiff asserts Morris also said, "I'm the BUM, Business Unit Manager, I know you love HR, you've already been across the street on me once and you see what's happened." *See* (ECF No. 20-2). Plaintiff argues the Report disregarded these comments which could lead a jury to reach a decision in Plaintiff's favor. Plaintiff uses these comments as support for her retaliation claim.

The Report considered Morris' comment but found that the Plaintiff did not present sufficient evidence to demonstrate that her reports to human resources were the "but-for" cause of her termination and this Court agrees. *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). Plaintiff uses Morris' alleged comment as proof of retaliation, but her argument is confusing. Based on this Court's review of the record, it does not appear that Plaintiff went to HR to complain about Morris. If she did, then Plaintiff has not argued that she complained about Morris, he became aware of such complaint, and as a result, she was suspended with pay.

On the other hand, if she did not go to HR about Morris, then Plaintiff must be arguing that Morris' comment refers to her previous complaints to HR about other matters. Assuming this is Plaintiff's argument, then it also fails because she has not connected the dots between her previous complaints and Morris' comments. She has offered no evidence that Morris was aware of these complaints, the substance of such complaints, and most importantly, that he suspended her *because* of these complaints.

Thus, Plaintiff has not established that her reports or complaints to HR were the but-for cause of Morris suspending her, and ultimately, her termination. Plaintiff's ninth objection is overruled.

### x. The Report Allegedly Disregards that Plaintiff was given Differing Reasons for her Suspension/Termination

Plaintiff argues the Report erred in relying on conflicting evidence regarding the reason for her termination. Plaintiff asserts the Report considers testimony from Partrich, the HR manager's testimony that Plaintiff was terminated because of "her behavior misconduct during the August 2019 Field Day, her history of attendance issues for which she was placed on a Performance Improvement Plan, and other various issues with her ability to accept constructive criticism." (ECF No. 25 at 24-5). Immediately thereafter, Plaintiff argues the Report states Plaintiff testified that she was terminated "for my performance on the job, the performance wasn't meeting their standards, or improving fast enough." (ECF No. 25 at25). Plaintiff contends her testimony and Patrich's testimony amount to conflicting evidence which create a genuine issue of material fact to prevent this Court from granting Defendant's Motion.

Defendant argues Plaintiff's argument misses the mark because it has not moved for summary judgment on the issue of why Plaintiff suspended and terminated, but rather because Plaintiff has failed to present competent evidence as to whether Defendant took any action against her due to her race or sex. This Court agrees with Defendant's argument and finds that these testimonies may present conflicting evidence, but the conflict is immaterial to the disposition of the claims for discrimination or retaliation.

Therefore, Plaintiff's tenth objection is overruled.

### xi.  The Report Allegedly Errs by Finding that Plaintiff's Retaliation Claim should be Dismissed

In her eleventh objection, Plaintiff argues the Report improperly recommended that her retaliation claims be dismissed.  She argues she improved her attendance/performance prior to being suspended, and on the day of her suspension, she engaged in activities protected by Title VII.

First, Plaintiff's objection is nonspecific. She argues the Report improperly recommended this Court dismiss her retaliation claim but she does not explain how or why the Report's ultimate recommendation is wrong. *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("Generally stated, nonspecific objections have the same effect as would a failure to object."). For example, Plaintiff argues she engaged in protected activities on the day of her suspension, but she does not explain which activities she is referring to. As such, this Court is left without any further insight as to the significance of this alleged fact or the Report's alleged error.

Additionally, Plaintiff argues she improved her performance prior to her suspension and the temporal proximity between her improvement and suspension requires this Court to deny Defendant's Motion. As previously stated by the Report and earlier in this Order, it is the perception of the decision maker which is relevant, not the self-assessment of Plaintiff. Plaintiff's belief that she improved is not evidence and timing cannot be the only basis for a claim for retaliation. "Suspicious timing alone generally not enough to create a triable issue retaliation case." *See Ham v. Parker*, Not Reported F.Supp.3d. at *11 (D.S.C. Dec. 5, 2014) citing *Palermo v. Clinton*, No. 11-1958, 2012 WL 169125 at *2 (7th Cir. 2012). "Rather, Plaintiff needs evidence that shows a causal connection between these two events." *Ham,* at *11. Here, Plaintiff has failed to show a causal connection between her complaints and discharge. The record indicates Defendant had concerns about Plaintiff's attendance issues prior to her submitting reports to human resources and there is no evidence that management was aware of such reports on the day of her suspension.

Therefore, Plaintiff's eleventh objection is overruled.

### xii.  The Report Allegedly Erred by Concluding that Plaintiff Did Not Suffer Disparate Treatment

Plaintiff objects that the Report erred in finding she did not suffer disparate treatment. Plaintiff argues the Report improperly found she was not treated worse than her white and male peers when she presented testimonial evidence from herself and colleagues, Montgomery and Cooper.

This Court finds Plaintiff has not submitted sufficient evidence that she was treated worse or differently than other employees outside of her protected class. Plaintiff's

21

argument is akin to comparator evidence though she does not identify it as such. Although comparator evidence is not required, it can be used to prove a discrimination claim. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 545–46 (4th Cir. 2003). To the extent Plaintiff is attempting to offer such evidence, it is insufficient. Plaintiff does not offer sufficient details or evidence concerning who the employees were, who their supervisors were, what actions were taken by the employees under what circumstances, and what responses were taken by Defendant to allow this Court to determine these employees to be appropriate comparators. Plaintiff's general statement that she was treated worse than other employees will not create a genuine issue of material fact for her discrimination claim.

Additionally, Plaintiff continuously points to the testimony from Montgomery and Cooper as supportive evidence of the alleged discrimination she experienced at Defendant's Mill. While the Report did consider this testimony, it ultimately found it was insufficient because it does not include the necessary facts to support such a claim and this Court agrees. For example, Cooper testified that Plaintiff received "more negative attention" by management than other employees. But, as the Report found, this testimony does not provide any detail or support as to who specifically did what or when.

Therefore, Plaintiff's twelfth objection is overruled.

### xiii.    Plaintiff Argues she did Present Evidence to Support the Causal Link Between her Protected Classes and her Suspension and Termination

In Plaintiff's thirteenth objection, Plaintiff argues the Report erred by finding Plaintiff failed to connect her allegations to specific adverse action taken by Defendant. Plaintiff argues she has presented evidence to support a causal link between her race, sex,

and protected activities and her subsequent suspension and termination. Further, she asserts the parties' arguments amount to credibility determinations that should be left to a jury.

Plaintiff's objection is nonspecific because it does not direct this Court to a portion of the Report which she alleges is in error. Further, Plaintiff asserts she has presented evidence to support the link between her protected status and Defendant's alleged adverse actions but does not describe this evidence. Even assuming Plaintiff is correct that the parties' arguments raise issues of credibility inappropriate for summary judgment, this Court has no way of determining what these issues of credibility are and who or what evidence they refer to.

Therefore, Plaintiff's thirteenth objection is overruled.

### xiv. The Report Allegedly Errs in Asserting Plaintiff Must Identify a Comparator to Succeed in her Claims

Plaintiff objects that the Report errs by misapplying Title VII and adding an element to Plaintiff's claims that does not exist. Specifically, she asserts the Report requires her to identify a comparator for her discrimination claims to survive Defendant's Motion.

The Report explicitly states "…a plaintiff is not required to identify a similarly situated white comparator to prove a discrimination claim…" (ECF No. 25 at 32). The Report refers to comparator evidence because Plaintiff's argument that she was treated worse than other white employees appears to be an attempt to offer such evidence. And further, because Plaintiff has been unable to establish an inference of unlawful discrimination through other means, the Report recognizes that Plaintiff may be able to do so through comparator evidence. Viewing the facts in the light most favorable to Plaintiff,

the Report assumes Plaintiff is offering such evidence but finds it to be insufficient because it lacks the necessary specific details to create a productive comparison between her and other employees outside of her protected class.

Therefore, Plaintiff's fourteenth objection is overruled.

### xv.   Plaintiff Argues she Proffered Evidence to Meet her Pretext Burdens

In Plaintiff's last objection, she argues that the Report erred in finding that Plaintiff did not proffer sufficient evidence of pretext.

Plaintiff's objection is a combination and regurgitation of the previous fourteen objections. She argues her attendance occurrences were excused by Defendant's policy and even after she improved her performance, she was suspended and terminated for no reason. Plaintiff's arguments have been thoroughly addressed previously in the above objections. Plaintiff's fifteenth objection does not present additional arguments or evidence to give rise to a genuine issue of material fact as to whether Defendant discriminated or retaliated against Plaintiff to allow this Court to deny Defendant's Motion.

Therefore, Plaintiff's fifteenth objection is overruled.

The Magistrate Judge, a veteran of many years on this Court, has thoroughly and comprehensively considered the issues in this case and addressed these issues in a detailed forty-two-page Report and Recommendation. The Plaintiff has objected, challenging virtually every aspect of the Magistrate Judge's Report. This Court has reviewed Plaintiff's objections, Defendant's replies thereto, and conducted the required *de novo* review of the entirety of the Report and Recommendation. Accordingly, the Report and Recommendation is adopted in all regards and incorporated herein by reference.

## IV.    CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. (ECF No. 25). Therefore, the court adopts the Report and Recommendation in all regards. Defendant's Motion for Summary Judgment (ECF No. 20) is granted and Plaintiff's claims are dismissed with prejudice.


IT IS SO ORDERED.


February 9, 2023                          Joseph F. Anderson, Jr.
Columbia, South Carolina              United States District Judge

25